**UNITED STATES of America ex rel. Alfred LEWIS, Petitioner-Appellant,**

v.

**Robert J. HENDERSON, Superintendent of Auburn Correctional Facility, Respondent-Appellee.**

**No. 819, Docket 74-2655.**

United States Court of Appeals, Second Circuit.

Argued April 1, 1975.

Decided June 4, 1975.

Certiorari Denied Dec. 1, 1975. See 96 S.Ct. 429.

---

Lawrence Stern, Brooklyn, N.Y., for petitioner-appellant.

David L. Birch, Deputy Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen., of the State of New York, Irving Galt, Asst. Atty. Gen., New York City, of counsel), for respondent-appellee.

Before ANDERSON, MANSFIELD and OAKES, *Circuit Judges.*

MANSFIELD, *Circuit Judge:*

Alfred Lewis, a state prisoner serving a term of 30 to 60 years for bank rob-

bery,[1] appeals from an unreported decision and order of the United States District Court for the Northern District of New York, Edmund Port, *Judge,* denying his petition for a writ of habeas corpus. Lewis alleged, *inter alia,* that his conviction was obtained through the use of his physically and mentally coerced confession and that state determinations of the voluntariness of his confession were factually and procedurally deficient. The district court denied his petition without a hearing on the ground that the state had accorded him a full and fair post-trial hearing on voluntariness and that the state hearing judge's determination of voluntariness was adequately supported by the record and the law. While we agree that the state court determination adequately determined voluntariness so far as physical coercion is concerned and we affirm as to that issue, we reverse and remand as to the claim of mental and psychological coercion because that allegation has never been sufficiently developed and passed upon by either a state or federal court.

Just after noon, on February 6, 1958, a bank at 155th Street and Third Avenue, Bronx, New York, was robbed of $12,000 by a lone gunman. Eleven days later, on February 17, at approximately 8:30 P.M., petitioner, then a 22-year old black man with a 9th grade education, was arrested in the lobby of an apartment building in Manhattan. According to police testimony given at the robbery trial and questioned by Lewis, he was arrested on the complaint of a Mrs. Elizabeth Waller, a resident of the apartment building. She had earlier related to the police that petitioner, on February 8 or 10, had left a briefcase containing a large sum of money in her apartment. When he returned for it on February 16 he told Mrs. Waller that $1,700 was missing and that he would return for it, an apparent threat which prompted Mrs. Waller to go to the police.

Upon arrest Lewis was immediately taken to the 30th Precinct headquarters where he was kept overnight until about noon of the next day, February 18. He was not booked on any charges and was not arraigned before a Magistrate on that night or the next morning.

The events at the 30th Precinct are in dispute. Petitioner testified on voir dire at his trial that from the time he arrived at the police station until the next morning he was subjected to interrogation and beatings by police officers, was not given any food and was denied the opportunity to sleep. The interrogation, he testified, related to the Bronx bank robbery, not Mrs. Waller's complaint, and petitioner was urged to confess and disclose the location of the robbery proceeds. The testimony of police officers present at the 30th Precinct during most of Lewis' stay there flatly contradicted his allegations of beatings. Other aspects of Lewis' story are corroborated or uncontradicted, however. The police witnesses agreed that Lewis was interrogated intermittently at the 30th Precinct throughout the night about the Bronx robbery. None of them knew whether petitioner had been given any food or allowed to sleep in the short intervals between interrogation sessions. Finally, a lineup and various showups were apparently held during the night and the next morning, with several witnesses to the robbery identifying petitioner as the perpetrator.

At about noon on February 18 petitioner was taken by several detectives to the 42d Precinct headquarters in the Bronx, near the scene of the robbery. He claims that he was again subjected to interrogation and beatings and had still neither been given food nor allowed to sleep. Again the police denied the alle-

---

1. At the time when this appeal was heard Lewis had been transferred to the West Street Detention Center, a federal prison in Manhattan, to await trial on federal bank robbery charges. The charges stemmed from his alleged robbery of a bank while he was out of prison for a short period of time in order to look for a job in anticipation of being paroled from state prison.

gations of beatings, agreed that the interrogations took place, but did not know whether petitioner had been allowed to eat or sleep. During this period the police tried to convince Lewis to cooperate by promising to drop criminal charges pending in another jurisdiction and to accept his claim that the money in the briefcase was gambling winnings, if he would agree to lead them to the money.

Lewis finally gave in at about 2:00 P.M. on February 18 and, in the company of a friend, led the police to the money. Shortly after his return to the 42d Precinct, at about 3:30 P.M., he confessed after further promises of help from the police in the disposition of his case. The confession was repeated in the presence of more detectives and given a third time to an Assistant District Attorney and a stenographer.

On the night of February 18 Lewis was held at the 42d Precinct in a detention cage. He tried to sleep on the floor and had only some candy bars to eat, which a uniformed officer had brought at his request. The next morning he had a bowl of soup and was finally arraigned at 10:00 A.M. on February 19 on bank robbery charges. There was no police testimony to contradict his description of this aspect of his confinement.

It is uncontested that not once during his 38 hours of detention by the police was Lewis ever advised of his right to remain silent or of his right to counsel. In addition, he was at no time allowed to see or speak to anyone but the police, except during the expedition to retrieve the money.

Petitioner's trial began on October 6, 1958. Copies of his confession were in-

troduced into evidence in the face of his objection that it was both false and the product of illegal coercion. Pursuant to the procedure in use in New York at that time both of these issues were left for the jury to resolve on the basis of the evidence and the law. Lewis, along with several police officers, testified on voir dire to their respective versions of the facts as related above. He was found guilty of the robbery and sentenced to 30–60 years imprisonment. The Appellate Division affirmed without opinion, *People v. Lewis,* 10 A.D.2d 924, 202 N.Y.S.2d 1001 (1st Dept. 1960), and leave to appeal to the Court of Appeals was denied.

Pursuant to a pro se coram nobis petition filed by Lewis in the state court, a *Huntley* hearing[2] was held in January 1970 by Justice Edward T. McCaffrey, who had presided at the original trial, to determine whether the confession was the result of illegal coercion. At the outset of the hearing Lewis, speaking for himself, asked the court to consider and determine "whether defendant's constitutional rights were violated when the Court at Page 667 of the trial record[3] refused defendant's request to charge the jury, that it must disregard the confession if it found it to have resulted from mental or psychological pressure and expressly limit [sic] the jury to consideration of physical pressure deciding whether it should accept, or disregard the confession, as per the original corum nobis petition verified August 11, 1969, and the defendant's traverse, connected therewith verified September 8th, 1969, since in view of what has just been said, the jury has not properly passed upon the question of voluntariness as indi-

---

**2.** Held pursuant to *People v. Huntley,* 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965), New York State's procedural response to *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

**3.** The trial record reveals the following request of Lewis' trial counsel and the trial judge's ruling:

"Mr. Kunstler: And secondly, your Honor, that the jury may take into consideration in determining whether the confession was coerced or not the mental condition of the

defendant and the length of time he was held by the police prior to his arraignment.

"The Court: The Court will charge that in deciding whether the defendant was coerced into confessing, the jury may take into consideration the length of time in which he was held by the police prior to arraignment and any physical pressure applied to him. You have an exception as to my omitting the mental or psychological." (Trial Minutes 667).

cated, in People versus Huntley 15, N.Y. 2nd Series, at Page 78." (Hearing Minutes 21–22). This request was thereupon denied by Justice McCaffrey. The evidence consisted of the transcript of the original trial testimony concerning the circumstances surrounding the confession, augmented by testimony of two new witnesses corroborating petitioner's claim of beatings and by further police testimony contradicting the beatings claim. The hearing record reveals that this evidence was introduced in an effort, notwithstanding Justice McCaffrey's earlier denial of Lewis' motion attacking the confession on grounds of mental coercion, to prove such coercion. Counsel for Lewis argued to the court that the circumstances surrounding the obtaining of the confession were "inherently coercive" (Hearing Minutes 89) and the district attorney responded "[s]o certainly, we can't say that any interrogation that took place the night before so affected his mind, that he could not . . . that his subsequent confession was involuntary." (*Id.* at 92). In an opinion dated March 24, 1970, which summarized in narrative form the evidence received by him, Justice McCaffrey concluded that the confession was "voluntarily made" and "not the result of physical coercion of any kind." The decision was affirmed on appeal without opinion, *People v. Lewis,* 35 A.D.2d 1086, 316 N.Y.S.2d 191 (1st Dept. 1970), and leave to appeal to the Court of Appeals was denied.[4]

Lewis filed a pro se habeas corpus petition in the Western District of New York, received on May 6, 1970, again attacking the voluntariness of his confession on grounds of physical and mental coercion. This was denied by Judge Curtin on June 28, 1971, on the ground that the *Huntley* hearing had adequately and fairly determined the issues as to voluntariness. A certificate of probable cause for an appeal was denied by both Judge

Curtin and this Court and certiorari was denied by the Supreme Court.

Undaunted, petitioner filed this habeas corpus petition pro se in the Northern District of New York, received on July 17, 1974, raising, *inter alia,* the voluntariness issue again along with the adequacy of the state court proceedings. Judge Port denied the petition essentially on the basis of the earlier decisions of Judge Curtin and Justice McCaffrey. We granted a certificate of probable cause permitting the instant appeal and permitted assignment of counsel.

## DISCUSSION

Putting aside the claim of physical abuse for the moment, the first question to be resolved on this appeal is whether the facts alleged by Lewis, if proven, would make out a case of unconstitutional mental coercion. Over the years the Supreme Court has created various formulations of the standard governing the admissibility of confessions under the Due Process Clause of the Fourteenth Amendment. Generally, if a defendant's "will was overborne," *Reck v. Pate,* 367 U.S. 433, 440, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961), or if the confession was not "the product of a rational intellect and a free will," *Blackburn v. Alabama,* 361 U.S. 199, 208, 80 S.Ct. 274, 280, 4 L.Ed.2d 242 (1960), it must be excluded from the evidence at trial on the ground that it was impermissibly coerced. Such general standards have been of but limited utility, however, when one is called upon in a particular case to decide whether, in "[t]he totality of the circumstances that preceded the [confession]," *Fikes v. Alabama,* 352 U.S. 191, 197, 77 S.Ct. 281, 284, 1 L.Ed.2d 246 (1957), a particular suspect was forced to confess against his will.

■ Fortunately, there are now a significant number of Supreme Court deci-

---

**4.** In view of these extensive state proceedings which presented all of the issues raised on this appeal to the highest New York State court, the state could not, and does not, contend that petitioner Lewis has failed to exhaust his state remedies. See, e. g., *United States ex rel. Ross v. LaVallee,* 448 F.2d 552 (2d Cir. 1971).

sions which go beyond general expressions of standards and explicate particular factors or groups of factors which, when included in the totality of circumstances, require that a resulting confession be invalidated on grounds of coercion. Applying these standards, petitioner alleges facts which would, if established, mandate a finding that his confession was obtained in violation of his Due Process rights. For present purposes the significant allegations made by him are the following:

(1) He was never once, during the whole period of pre-arraignment interrogation, advised of his right to remain silent or of his right to counsel. Although this is a pre-*Miranda* case, this failure on the part of police in a particular case has long been recognized as significant in the calculus of coercion. *Davis v. North Carolina*, 384 U.S. 737, 740–41, 86 S.Ct. 1344, 16 L.Ed.2d 360 (1966); *Culombe v. Connecticut*, 367 U.S. 568, 609–10, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961).

(2) According to Lewis he was arrested on the pretense of Mrs. Waller's alleged complaint, held for approximately 38 hours by the police during which time he was neither booked nor arraigned, and questioned during most of the first half of this period. Extremely long periods of confinement coupled with successive periods of questioning, such as occurred here, usually tend to pressure a defendant into saying what the police want in order to stop the steady pressure. *Clewis v. Texas*, 386 U.S. 707, 711–12, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967).

(3) During his extended period of detention before and after confession, Lewis was not allowed to make any telephone calls, was not allowed to see anyone and, with one minor exception, saw and spoke to no one but the police. This sort of isolation denies a defendant psychological support from friends, relatives and counsel, putting him at an extreme disadvantage when confronting the police. *Haynes v. Washington*, 373 U.S. 503, 511, 83 S.Ct. 1336, 10 L.Ed.2d 513

(1963); *Haley v. Ohio*, 332 U.S. 596, 599–601, 68 S.Ct. 302, 92 L.Ed. 224 (1948).

(4) Lewis was continuously interrogated throughout the night of February 17 and on into February 18 on an intermittent basis without being given any real opportunity to sleep or any substantial food. The debilitating effect of such treatment on a defendant's will and mind has long been recognized by the Supreme Court. *Payne v. Arkansas*, 356 U.S. 560, 567, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958); see *Clewis v. Texas, supra,* 386 U.S. at 712, 87 S.Ct. 1338.

(5) Lewis, at the time of his confession, was a young 22-year old black man of limited education with apparently little prior experience with police methods, thus rendering him particularly susceptible to police pressure. *Haley v. Ohio, supra,* 332 U.S. at 599–601, 68 S.Ct. 302; see *Davis v. North Carolina, supra,* 384 U.S. at 742, 86 S.Ct. 1344.

(6) The police detectives made various promises to petitioner, including an offer to "help" him with his case if he confessed and a pledge that his claim of ownership would not be challenged if he would only retrieve the money. Furthermore, his agreement to retrieve the money and his confession followed soon after these false promises, underscoring their effect upon his will. *Lynumn v. Illinois*, 372 U.S. 528, 531–35, 83 S.Ct. 817, 9 L.Ed.2d 922 (1963); *United States ex rel. Everett v. Murphy*, 329 F.2d 68 (2d Cir.), *cert. denied,* 377 U.S. 967, 84 S.Ct. 1648, 12 L.Ed.2d 737 (1964); see *Bram v. United States,* 168 U.S. 532, 542–43, 18 S.Ct. 183, 42 L.Ed. 568 (1897).

■ Of particular relevance here are the Supreme Court's decisions in *Haynes v. Washington, supra,* and *Haley v. Ohio, supra.* The defendant in *Haynes* was held incommunicado for 16 hours while the police questioned him until he confessed. He was not advised of any of his rights and the circumstances of his confinement implied that he would be allowed to see no one until he confessed. In *Haley* the defendant was a young boy who was arrested at midnight and ques-

tioned all night without benefit of counsel or of a friend to advise him. He finally confessed five hours later when confronted with the alleged confessions of his alleged accomplices. Although not all of the factors of *Haynes* or *Haley* (or of any other case for that matter) are present here, the same type of techniques designed to overbear the defendant's will were allegedly used. Defendant is described as young, of limited education, arrested in questionable circumstances, questioned all night, denied sleep and food, deceived by false promises of help and completely deprived of the support of counsel or friends until he confessed. Here, as in many similar cases, e. g., *United States ex rel. Weinstein v. Fay,* 333 F.2d 815 (2d Cir. 1964); *United States ex rel. Williams v. Fay,* 323 F.2d 65 (2d Cir. 1963), *cert. denied,* 381 U.S. 945, 85 S.Ct. 1788, 14 L.Ed.2d 709 (1965); *United States ex rel. Caminito v. Murphy,* 222 F.2d 698 (2d Cir.), *cert. denied,* 350 U.S. 896, 76 S.Ct. 155, 100 L.Ed. 788 (1955), we cannot avoid the conclusion that these facts, if proved, would establish that Lewis' confession was obtained in circumstances which overcame his will. Its use against him at his trial would therefore violate his Due Process rights. *Reck v. Pate, supra.*

■ Since we find that Lewis has alleged mental coercion amounting to a deprivation of Due Process we must determine whether, under *Townsend v. Sain,* 372 U.S. 293, 310–19, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), and 28 U.S.C. § 2254(d),[5] the district court was required to hold a hearing on his factual contentions, see *Procunier v. Atchley,* 400 U.S. 446, 451–52, 91 S.Ct. 485, 27 L.Ed.2d 524 (1971). Such a hearing is, of course, required if the state evidentiary hearing failed to resolve the merits of the factual dispute or was not "full and fair." *Townsend v. Sain, supra,* 372 U.S. at 313, 83 S.Ct. 745.

■ There is no question here that a state evidentiary hearing was held on the issue of voluntariness and that the decision was adverse to petitioner. We must still decide, however, whether that hearing resolved the merits of the claim of mental coercion and was "full and fair." It is petitioner's contention that the state *Huntley* hearing was fatally deficient because of the court's failure to pass upon his claims of mental and psychological coercion.

The *Huntley* hearing judge concluded in his opinion that Lewis' confession was "voluntarily made" and "not the result of *physical* coercion of any kind." (Emphasis supplied) There was no conclusion specifically addressed to mental coercion. The opinion itself contains no explicit findings of fact. It simply recounts the relevant testimony, emphasizing portions dealing with physical abuse, based on the transcript of the original trial and the testimony of live witnesses at the hearing. The only hint of the judge's view of the facts is his observation concerning the credibility of Lewis and the two witnesses called by him and discrepancies in the tales recounted by each. The opinion makes no attempt to resolve these discrepancies, however.

Clearly, the hearing judge did not believe Lewis' allegations of physical abuse. This is the only conclusion that can be drawn from his statement that no physical coercion was used. On the other hand, the opinion is silent as to mental coercion. The bald statement that the confession was "voluntarily made" might, standing alone, mean that the allegations concerning mental coercion were not believed. However, when considered in the context of the earlier trial and of the later *Huntley* hearing it is clear that Justice McCaffrey did not believe that the allegations of mental coercion made out a constitutional violation and that he accordingly was not giving them consideration. At Lewis' original trial he had erroneously refused to instruct the jury that Lewis' "mental condition" should be considered by it in determining the voluntariness of the con-

---

5. 28 U.S.C. § 2254(d) is treated in this Circuit as, in essence, a codification of the hearing criteria of *Townsend v. Sain, supra.* *United States ex rel. Hughes v. McMann,* 405 F.2d 773, 776 (2d Cir. 1968).

fession.[6] Instead he charged that the length of time in police custody before arraignment and physical abuse were the relevant factors to be considered by the jury, granting "an exception as to my omitting the mental or psychological." There is no indication in his *Huntley* opinion that either his view of the law had changed or that mental coercion was actually considered. On the contrary, at the outset of the *Huntley* hearing he denied Lewis' motion to expand the hearing to reconsider his earlier ruling that the jury should not be instructed that it "must disregard the confession if it found it to have resulted from mental or psychological pressure," thus reaffirming his view limiting "the jury to a consideration of physical pressure." This view is confirmed by his emphasis in his *Huntley* hearing opinion upon evidence with respect to physical abuse in the recited testimony, which makes up the bulk of the opinion, to the exclusion of evidence indicating mental coercion. Viewing the record as a whole we conclude that the state judge found the confession to be voluntary because he disbelieved the allegations of physical abuse while ignoring the allegations going to mental coercion. The finding of voluntariness thus cannot be said to have resolved any of the factual disputes noted above as to mental coercion or even reached a decision on that issue. *Cun-*

*ningham v. Heinze,* 352 F.2d 1, 3–4 (9th Cir. 1965), *cert. denied,* 383 U.S. 968, 86 S.Ct. 1274, 16 L.Ed.2d 309 (1966); *United States ex rel. Kenney v. Fay,* 232 F.Supp. 899 (S.D.N.Y.1964).[7]

This case then falls into the first category of cases in which an evidentiary hearing must be held by the district court under *Townsend v. Sain, supra,* 372 U.S. at 313–16, 83 S.Ct. 745, and 28 U.S.C. § 2254(d). That is, the merits of the factual dispute surrounding the existence of mental coercion were not resolved in the state hearing. No specific factual findings were made and the federal court cannot reconstruct the state findings, if any, because there is a strong indication that a portion of the applicable constitutional doctrine was misapplied or ignored. *Id.*

 Turning to the allegations of physical abuse, the situation is wholly different. The *Huntley* judge certainly considered this issue both at the original trial and at the later hearing. His opinion recounted all of the testimony on the issue of physical abuse and specifically concluded that the confession did not result from such treatment. We cannot assume from the *Huntley* hearing opinion and the record on this appeal that the *Huntley* judge applied the incorrect constitutional standards to this issue, see *LaVallee v. Delle Rose,* 410 U.S. 690, 93

6. Lewis also attacked, without success, this apparently erroneous jury instruction in state collateral proceedings and in the pro se habeas corpus petition filed in this case. On this appeal the issue is not raised and need not be considered in light of our disposition of the case.

7. This case may be favorably contrasted to *LaVallee v. Delle Rose,* 410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973) (*per curiam*), in which the Supreme Court reversed a decision of this court upholding a hearing on a habeas corpus petition because of an inability to determine whether the state court, after a *Huntley* hearing, had found the confession voluntary because of an erroneous view of the law or because of a resolution of factual issues against the petitioner. The Court concluded that under all of the circumstances the federal courts could be reasonably certain that the correct standard had been applied and that no federal hearing was necessary or proper. Al-

though the state court had made no specific findings of fact, there was no evidence that the wrong standard had been utilized and the determination was made on the "totality of the circumstances" with the proper factors apparently considered.

Here, by way of contrast, the state judge did not indicate in any way in his *Huntley* opinion that his earlier erroneous view of the law had changed since 1958. He recounted all of the testimony before him with emphasis on the *allegations and denials of physical abuse* but with no reference to mental coercion. He discussed the credibility of petitioner's witnesses, but their testimony only related to the allegations of physical beatings. Finally, he expressly concluded only that the confession was not the result of "physical" coercion. In contrast to *Delle Rose,* there is no indication here that the correct law was applied. However, there is significant evidence that an important doctrine of law was simply ignored.

S.Ct. 1203, 35 L.Ed.2d 637 (1973) (*per curiam*). Nor can we say, after an examination of the record, including the *Huntley* hearing transcripts, that the state factual determination is not fairly supported by the record as a whole or that there are any other defects in the state court proceedings.

■ Although not an issue specifically raised by the state, we are satisfied that the denial of Lewis' previous application for habeas corpus relief in the federal courts cannot bar consideration of the instant petition. The previous denial could only constitute a bar if: (1) the grounds for relief in the present application were determined adversely to Lewis in the prior application, (2) the prior determination was on the merits and (3) the ends of justice would not be served by reaching the merits of this application. *Sanders v. United States,* 373 U.S. 1, 15, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). There is no question that the claims presented in the present application were also presented in the prior one. However, as we have shown, Lewis' allegations concerning mental or psychological coercion raise issues of fact that were not resolved and probably not even considered by the state court. The prior adjudication of the district court on Lewis' first pro se petition[8] appears to have ignored these issues also. The district court did not mention them and Judge Curtin simply concluded that the confession was "not the result of physical coercion of any kind." In these circumstances a decision without a hearing, much less any mention of the mental coercion issue, is not on the merits and cannot bar consideration of the instant petition. *Id.* at 16, 83 S.Ct. 1068; see *Saville v. United States,* 451 F.2d 649, 650 (1st Cir. 1971).

■ Since a state court conviction tainted by an involuntary confession can-

not stand under the Due Process Clause, *Jackson v. Denno,* 378 U.S. 368, 376, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *Payne v. Arkansas, supra,* 356 U.S. at 567–68, 78 S.Ct. 844, the decision below is reversed as to the issue of mental and psychological coercion and the case is remanded to the district court for a hearing to resolve the factual disputes surrounding that issue.

---

**8.** It has been suggested that if the prior application was denied without appointment of counsel any subsequent application must be considered on its own merits and not summarily denied on the basis of the previous denial. *Tucker v. United States,* 138 U.S.App.D.C. 345,

427 F.2d 615, 617–18 n.13 (1970). We do not explicitly rest our decision on that ground, although lack of counsel may explain why the district court was apparently unaware of the mental coercion claim in the prior application.