OPINION OF THE COURT
Leslie Crocker Snyder, J.
Defendant was indicted and charged with the crime of murder in the second degree in violation of Penal Law § 125.25 (1). Defense counsel has moved to suppress statements allegedly made by the defendant to an individual cooperating with New York State law enforcement officials while the defendant was incarcerated on unrelated charges in a Georgia correctional facility. The defendant claims that these statements were obtained in violation of his rights under the Fifth and Sixth Amendments of the United States Constitution, and the New York State Constitution. This issue appears to be one of first impression in New York.[1]
This court conducted a Huntley hearing and finds that the statements were freely and voluntarily given by the defendant, that the police were not required to give the defendant his Miranda warnings prior to the informant speaking to the defendant and that questioning the defendant on the instant homicide while he was incarcerated on unrelated charges in another jurisdiction did not abridge his Sixth Amendment right to counsel.
*765 FINDINGS OF FACT
The People called one witness at the hearing. The court found his testimony to be forthright and credible and credits his testimony as follows.
Detective Michael Burke has been a member of the New York City Police Department for 10 years, and for the past 5 years has been assigned to homicide investigations.
On September 24, 1986, Detective Burke was assigned to investigate the death of an unknown black female, later identified as Ms. Veorah Turner, who had been found strangled on July 16, 1986. Her body was placed inside a refrigerator and left in an abandoned building at 70 West 127th Street.
In his investigation, Detective Burke located a witness, Gregory Capers, who provided information concerning this homicide. Gregory Capers informed Detective Burke that a childhood friend of his, "Tom Slick”, had committed a murder in Georgia and had been hiding in New York. Capers stated that "Tom Slick” admitted to him that, while hiding in New York, he had strangled a woman named Veorah Turner and placed her inside a refrigerator at a "crack house” at 70 West 127th Street.
Detective Burke learned that "Tom Slick” was also known as Thomas Crawford and that he was incarcerated on a manslaughter conviction in a Georgia correctional facility. He asked Gregory Capers to contact the defendant’s family in Georgia in order to determine in which facility Crawford was being held.
Crawford’s family told Capers that the defendant was incarcerated at Reedsville Correctional Facility and that he was restricted to one five-minute call every two weeks. Capers volunteered to speak to the defendant about the murder of Ms. Turner, stating that the defendant would bring up the subject of the murder on his own. Because of the telephone restrictions at Reedsville, Detective Burke and Capers decided to have Capers visit the defendant in person.
Capers wrote the defendant and told him he would like to visit him. The defendant readily agreed and listed Capers under the name of "Dennis Crawford” because his prison visits were restricted to relatives. The defendant placed the name "Dennis Crawford” on his visitor’s list.
On June 18, 1988, Gregory Capers visited the defendant at Reedsville Correctional Facility. Detective Burke, accompanied *766 by his partner, drove Capers to the prison. In the warden’s office, Detective Burke placed two recording devices upon Gregory Capers, activating them both. Gregory Capers did not have access to the devices.
The visit between Capers and the defendant occurred in a small room off the main visiting area. Capers and the defendant were seated facing one another, straddling a bench. Neither person was restrained in any way. The conversation between Capers and the defendant took approximately one hour. During this conversation, the defendant asked Capers, "did they find out about the girl yet? You know who I was talking about. Nose’s girl. Do you know if they find out about that whore? I croaked the shit out of that whore.” After the visit was over, Capers returned to the warden’s office and Detective Burke deactivated both devices, removed the tapes and properly safeguarded them. A transcript was made of the tapes.
On May 5, 1989, Detective Burke, Investigator John Capers and Assistant District Attorney Ellen Corcella visited the Reedsville Correctional Facility. Upon arrival, Detective Burke and Investigator Capers met with the defendant.
Prior to any conversation, the detectives identified themselves to the defendant and gave the defendant his Miranda warnings. The defendant waived his right to counsel and right to remain silent and agreed to speak with the detectives.
The defendant told the detectives that he had been in New York while he was a fugitive from the Georgia homicide. He stated that after serving eight months on a gun charge in Rikers, he worked at a "crack spot” and shooting gallery at 70 West 127th Street as an enforcer. He admitted to the detectives that he had a $l,000-a-day drug habit at the time. The detectives asked the defendant if he was willing to speak with Assistant District Attorney (ADA) Ellen Corcella and he agreed.
After ADA Corcella entered the room, the detectives advised the defendant that the conversation was going to be taped and again informed him of his Miranda rights. The defendant again agreed to waive his Fifth and Sixth Amendment rights. This statement was taken in a back corner of a visiting room with the defendant not restrained in any way. The tape recording and a transcript of the tape were admitted into evidence at the hearing.
*767 CONCLUSIONS OF LAW
Custodial Questioning
After a suspect has been taken into custody, Miranda warnings must precede any interrogation by law enforcement officers. The United States Supreme Court defines "custodial interrogation” as questioning which takes place "in a context where [the] freedom to depart [is] restricted”. (Oregon v Mathiason, 429 US 492, 495 [1977].)
The constitutionality of questioning a suspect already incarcerated on unrelated charges was addressed recently by the United States Supreme Court in Illinois v Perkins (496 US 292 [1990]). In Perkins, the police were investigating the murder of Richard Stephenson. In March of 1986, an informant told the police that a fellow inmate confessed to the murder in detail. By the time the police learned of the confession, the suspect, Lloyd Perkins, had been released but was incarcerated in another county on charges unrelated to the homicide. An undercover officer and the informant both posed as fellow prisoners and were placed on Perkins’ cellblock. The officer told the suspect that he was planning an escape, and in a secret meeting to discuss the details of the plan, stated that his girlfriend could smuggle in a gun. In an offhand way, he asked Perkins whether he had ever "done anybody”. Perkins then described in detail the Stephenson murder. The issue presented to the court was whether the officer was required to read the inmate his Miranda rights prior to this conversation.
In declining to require an undercover officer posing as an inmate to "Mirandize” an incarcerated suspect, the Perkins court stated that "custodial interrogation” involves two elements: the suspect must be in custody and he must be aware that he is being interrogated by government authorities or their representatives. (Illinois v Perkins, supra, 496 US, at 296.) The court held that the ingredients of a "police-dominoted” atmosphere and compulsion are not present when an incarcerated person speaks freely to someone whom he believes to be a fellow inmate. Noting that the premise of Miranda is that coercion results from the interaction of custody and official interrogation, the court emphasized that there is no empirical basis for the assumption that a suspect speaking to those whom he assumes are not officers will feel compelled to speak by the fear of reprisal for remaining silent or in the hope of more lenient treatment should he confess. (Illinois v Perkins, 496 US 292, supra.)
*768 In looking at the circumstances of the interrogation to determine if the statements were coerced, the Perkins court distinguished a previous Supreme Court ruling in Mathis v United States (391 US 1 [1968]). In Mathis, the defendant was confined in Florida on unrelated charges when he was questioned by a government agent on tax fraud charges. The Perkins court held that the defendant in Mathis knew that the agent was a government official investigating the charges, whereas the inmate in Perkins believed he was talking to a friend. The court emphasized that, "[w]hen a suspect considers himself in the company of cellmates and not officers, the coercive atmosphere is lacking.” (Illinois v Perkins, 496 US 292, 296, supra.)
Many lower courts have refused to find that every question directed to a prison inmate in connection with criminal activity be preceded by Miranda warnings merely because a prisoner is always in custody. (See, United States v Conley, 779 F2d 970 [4th Cir 1985]; Flittie v Solem, 751 F2d 967 [8th Cir 1985]; United States v Scalf, 725 F2d 1272 [10th Cir 1984]; Cervantes v Walker, 589 F2d 424 [9th Cir 1978].)
For example, in Cervantes (supra), an inmate who spoke to a prison guard about a stabbing without being read his Miranda rights argued that his statements must be suppressed. The Ninth Circuit rejected the principle that any prison interrogation is per se custodial. The Cervantes court held that restriction is a relative concept and that, in prison settings, this necessarily implies a change in the prisoner which results in an added imposition on his freedom of movement. Therefore, a court must examine the circumstances of a particular situation to determine whether the inmate was subject to more than the usual restraint on his freedom to depart. (Cervantes v Walker, supra, at 428.) Applying this principle, the court found that under the circumstances of the particular case the interrogation of the defendant was not coercive in nature.
The same issue was addressed by the Fourth Circuit in United States v Conley (779 F2d 970, supra). In refusing to apply a per se rule requiring Miranda in prison settings, the court pointed out the illogical results that would flow from such a rule. The court noted that formal warnings would be required prior to many of the informal conversations between prisoners and guards which could potentially involve incriminating admissions and that the result would be that greater protection would be afforded to a prisoner than to his nonim *769 prisoned counterpart. (United States v Conley, 779 F2d 970, 973, supra.)
The Second Circuit considered the issue of custodial interrogation in Alexander v Connecticut (917 F2d 747 [1990], cert denied — US —, 111 S Ct 2831 [1991]). In Meachum v Alexander (496 US 914 [1990]), the Supreme Court vacated the Second Circuit’s original decision in Alexander v Connecticut (876 F2d 277 [1989]), and remanded the case for reconsideration in light of Perkins (supra). The defendant in Alexander was incarcerated on an arson charge and was a suspect in the murder of his accomplice. The police recruited a friend of the defendant who agreed to help in discovering whether the defendant was involved in the murder and escorted the friend to the prison facility to visit the defendant. The friend tried to persuade the defendant to reveal the location of the body and offered to help prevent the discovery of the body.
Applying the holding of Perkins (supra), the Alexander court found that the defendant’s statements to his friend were freely and voluntarily made. (Alexander v Connecticut, 917 F2d 747, 750 [1990], cert denied — US —, 111 S Ct 2831 [1991], supra.) The court noted that the defendant confessed to the murder under the mistaken belief that his friend would aid in concealing the body. Citing Perkins, the Second Circuit stated: "[deception which takes advantage of a suspect’s misplaced trust in a friend does not implicate the right against self-incrimination nor the fifth or sixth amendment rights to counsel”. (Alexander v Connecticut, supra, at 751; accord, State v Bradley, 236 Neb 371, 461 NW2d 524 [1990] [the taped telephone conversations between a defendant in jail and a friend should not be suppressed even though no Miranda warnings were given prior to the initiation of the conversations].)
Some courts have held that the questioning of an incarcerated suspect by an agent of the police is the equivalent of custodial interrogation. In Nelson v Fulcomer (911 F2d 928, 938 [3d Cir 1990]), the Third Circuit found that the circumstances surrounding the defendant’s confession were not "devoid of police 'domination’ * * * [but] saturated with it”. In Nelson, the defendant invoked his right to remain silent after the police attempted to question him about a rape and murder. The police then left the defendant and sent in his accomplice who told the defendant that he had confessed. The accomplice later testified to the defendant’s response to the *770 question: "[h]ow much did you tell them?” (supra, at 934). In remanding the case for a hearing, the Third Circuit found that confronting the defendant with his accomplice was the equivalent of custodial interrogation. The court noted that unlike Perkins (supra), the defendant had every reason to believe that the accomplice was cooperating with police and that any conversations would be promptly disclosed to law enforcement authorities.
To determine whether a defendant’s statements are the product of coercion, the focus is on the belief of the defendant. As the Perkins court stated, deception which takes advantage of a suspect’s misplaced trust in a friend does not implicate the right against self-incrimination. (Illinois v Perkins, 496 US 292, 298, supra.) Ploys to mislead a suspect or to lull him into a false sense of security do not rise to the level of compulsion or coercion to speak and are not within Miranda’s concerns. (Illinois v Perkins, supra, 496 US, at 298.)
Indeed, the New York courts have held that the use of deception in questioning suspects does not violate a defendant’s rights under the New York State Constitution. (See, e.g., People v Tarsia, 50 NY2d 1 [1980] [police telling defendant they were looking into "a possible violation of shooting” rather than the actual charge of attempted murder did not render the defendant’s statements involuntary]; People v Green, 147 AD2d 955 [4th Dept 1989] [police misrepresentation that the defendant’s accomplice admitted the murder did not warrant a suppression of the defendant’s statement]; People v Jackson, 143 AD2d 471 [3d Dept 1988] [fact that the police misled the defendant into believing that his accomplice was cooperating did not render the confession inadmissible]; People v Hill, 138 AD2d 629 [2d Dept 1988] [police used ruse to get the defendant to the police station].)
This court finds that under Illinois v Perkins (496 US 292, supra), Miranda warnings need not be given prior to the initiation of a conversation between an incarcerated defendant and a friend who, unbeknownst to the defendant, is cooperating with the police where the conversation does not occur in a coercive, police-dominated atmosphere. Further, when a friend, real or feigned, speaks with an incarcerated defendant at police request, this is not the functional equivalent of interrogation as envisioned by Miranda.
Applying the above principles to the instant case, the questioning of the defendant did not rise to the level of "custodial *771 interrogation” requiring Miranda warnings. The defendant was not restrained in any way and he was free to terminate the conversation and leave the visiting room at any time he wished. To terminate the visit, the defendant only had to request that the prison guard located outside the room take him back to his cell. Moreover, the room itself was a visiting room — a location in a prison that possesses the least indicia of a "custodial setting”. The only indication that the defendant was in prison was the presence of the prison guard outside the room.
Rather than desiring to terminate the visit, the defendant clearly relished "boasting” to his friend about the details of the homicide. The defendant initiated the discussion concerning the "body in the refrigerator” and spoke with his friend freely and voluntarily. In order to speak to his friend, the defendant had to identify Capers as a relative to the prison authorities — a clear indication that the defendant wanted the opportunity to speak with Capers.
In the instant case, the actions of the government were far less "covert” than in Perkins (supra) or in Alexander (917 F2d 747, supra). In Perkins, the agent and the informant dressed in prison garb, moved into the suspect’s cellblock, and during the course of planning an escape involving the potential use of a firearm, casually asked the suspect whether he had "done anybody”. In this case, the police did not go undercover to mislead the defendant, but rather the informant was present at the defendant’s request.
In addition, the informant in this case acted significantly less affirmatively than the undercover agent in Perkins (supra) or the friend in Alexander (supra). In Perkins, the agent initiated the conversation concerning the murder and in Alexander, the friend offered to help the defendant conceal the victim’s body. In the instant case, the defendant initiated the conversation about the murder of Veorah Turner in order to "impress” his friend.
As the Perkins court stated, where a suspect assumes that he is talking to a friend, and the circumstances do not indicate that the conversation was coerced, a court should not assume that coercion was present. In examining the circumstances surrounding the defendant’s statements to informant Capers, it is clear that the statements were freely and voluntarily made and that the defendant "relished” the ability to "brag” to his friend that he had committed this crime.
*772 The defense contention that any questioning of the defendant by the informer should have been preceded by Miranda warnings appears absolutely absurd to this court. Such a requirement would defeat the entire purpose of the questioning and the police might as well take a defendant out of jail and bring him to a police station for questioning where Miranda warnings would obviously be required. If our appellate courts are to require Miranda warnings where no actual coercion is present and a defendant is merely incarcerated, let them simply state that no defendant in jail can be questioned or spoken to by anyone acting on behalf of the police and that if such conversation or questioning occurs, it can never be used against the defendant. Such a position appears illogical and absurd and would result in incarcerated suspects receiving a "benefit” from their confinement. This court holds that being in jail should never be considered coercive "per se”, and that an incarcerated defendant’s statements must be the product of actual coercion if they are to be suppressed.
Sixth Amendment Right to Counsel
The defendant’s claim that his right to counsel guaranteed by the Sixth Amendment of the United States Constitution and by the New York State Constitution has been violated is without merit. In Massiah v United States (377 US 201 [1964]), the Supreme Court held that the government may not use an undercover agent to speak with a defendant once his right to counsel has attached. However, in the instant case, as in Perkins, no charges had been filed against the defendant on the subject matter of the inquiry and therefore, the defendant’s right to counsel under both the Sixth Amendment of the United States Constitution and New York State Constitution had not attached. (Illinois v Perkins, 496 US 292, supra; People v Bing, 76 NY2d 331 [1990].)
The Miranda Waiver was Constitutional
The defendant’s claim that his Miranda waiver was rendered ineffective because he was not informed of the precise area of questioning has no merit. In Colorado v Spring (479 US 564 [1987]), the United States Supreme Court considered whether a valid waiver of constitutional rights requires that a suspect be advised prior to any questioning of all possible subjects of the interrogation.
In that case, after waiving his Miranda rights, the defendant was questioned concerning the firearms transaction for *773 which he had been arrested and then was asked whether he "had ever shot anyone else”. (Colorado v Spring, supra, at 567.) The defendant argued that his waiver was ineffective because he was not informed prior to the waiver that he would be questioned about the murder. The court held that a suspect’s awareness of all possible subjects of questioning is not relevant in determining whether the suspect voluntarily, knowingly and intelligently waived his constitutional rights.[2] The New York courts are in accord. (See, People v Tarsia, 50 NY2d 1, supra; People v Richer, 168 AD2d 910 [1990]; People v Seaman, 130 AD2d 875 [3d Dept 1987].)
"Conflict of Law” Issue
Finally, the defendant’s remaining claim that the admissibility in New York of a statement elicited in an out-of-State form must be determined under the laws of the other State is also without merit. This issue was decided by the Third Department in People v Benson (88 AD2d 229 [3d Dept 1982]).
In Benson (supra), the defendant was charged with committing a murder in New York. The New York police learned that the defendant was in Texas, questioned him in Texas, and elicited a confession. The defendant moved in the New York court to suppress statements given in the out-of-State forum, alleging that Texas law required that he be informed of his right to terminate any questioning at any time and that any statements had to be electronically recorded. The trial court found that the issue of suppression of evidence was procedural in nature and, therefore, the law of the forum State was applicable.
In affirming the conviction, the Third Department held that the procedural/substantive law distinction was irrelevant due *774 to New York State’s "paramount interest in the application of its laws to this case.” (People v Benson, supra, 88 AD2d 229, 231; see also, People v Douglas, 123 Misc 2d 75 [applying the rationale set forth in Benson, the trial court excluded a statement under New York law which would have been admissible under Florida law]; People v Graham, 90 Misc 2d 1019 [Sullivan County Ct 1977] [where the court held that New York law should apply to crimes committed in-State because New York has the "greater interest” in prosecuting such offenses].)
Conclusion
This court finds that the only logical decision under the circumstances presented here is that the People can use the defendant’s statements to his "friend” at trial. The defendant chose to admit the informant to the prison, to speak with the informant in the visiting room and to "boast” to the informant about the murder of Veorah Turner. It would be difficult to conceive of circumstances which could be less coercive. The defendant spoke at his own peril.
In addition, the statements made by the defendant to the detectives and the Assistant District Attorney approximately eight months after his conversation with the informant were clearly knowingly and voluntarily made. The defendant was read his Miranda rights prior to any questioning and agreed thereafter to make a statement.
The defendant’s claims that Miranda warnings were required prior to his conversation with his "friend”, that the use of the informant to elicit incriminating statements violated his Fifth Amendment rights, that all questioning was in violation of his Sixth Amendment right to counsel, that his subsequent Miranda waiver was ineffective and that each of these issues must be decided under Georgia law are without merit.
The defendant’s motion to suppress the statements given to the informant and, subsequently to the detectives and the Assistant District Attorney, is denied.

. Some New York courts have discussed the interrogation of incarcerated suspects in dicta. (See, e.g., People v Smith, 117 Misc 2d 737, 743 [1983]; People v Margolies, 125 Misc 2d 1033, 1041 [1984].)

. (See also, Arizona v Roberson, 486 US 675 [1988], where the Supreme Court reaffirmed the principle that in deciding the voluntariness of a suspect’s statements, the court’s inquiry must focus on the state of mind of the detainee.)
In Roberson, the court held that the defendant’s unwillingness to answer questions without the advice of counsel on his arrest charges precluded the police from questioning the defendant as to an unrelated offense. The court noted that in Colorado v Spring (479 US 564), the court held that the defendant’s Miranda waiver was effective because there was no qualification of the broad and explicit warning given to him that anything he said could be used against him. In precluding the use of the statements in Roberson, the court found that conversely, the defendant’s unqualified unwillingness to answer any questions indicated that he did not feel sufficiently comfortable with the pressures of custodial interrogation to speak in the absence of counsel.