Thomas L. CRAWFORD, Petitioner,

v.

Christopher ARTUZ, Superintendent, Green Haven Correctional Facility, Respondent.

No. 98 Civ. 7938.

United States District Court, S.D. New York.

Oct. 11, 2001.

---

Thomas L. Crawford, Comstock, NY, pro se.

Alice Wiseman, Robert M. Morgenthau, District Attorney, New York City, for respondent.

### DECISION AND ORDER

MARRERO, District Judge.

Thomas L. Crawford ("Crawford"), *pro se* and incarcerated, petitions for a writ of

habeas corpus under 28 U.S.C. § 2254. Crawford attacks his 1992 New York State murder conviction on the grounds that: (1) incriminating statements he made that were admitted in evidence were obtained in violation of his *Miranda* rights, (2) his confession was involuntary; (3) evidence presented at trial was tampered with, not properly authenticated and violated his right against unlawful search and seizure; and (4) he received ineffective assistance of counsel. For the reasons discussed below, Crawford's petition is DENIED.

## I. BACKGROUND

On July 16, 1986 the decomposed body of Ms. Veora Turner ("Turner") was found stuffed in a refrigerator located in an abandoned building in the Bronx. Turner had been reported missing in 1985 and at the time her body was identified she had been dead for approximately one year. The coroner determined that the cause of death was strangulation. Along with the body police found a wire ligature that investigators suspected was used to strangle Turner before her body was placed inside the refrigerator.

Detective Michael Burke ("Burke") was assigned to investigate Turner's death. In 1987, police in New Jersey spoke with a man named Gregory Capers ("Capers") who stated in connection with an investigation into other crimes that in 1986 his childhood friend, Crawford, had told him that he had strangled a woman named "Veora" in the Bronx. Contacted by New Jersey police, Burke interviewed Capers about his statements. Capers agreed to cooperate with Burke's investigation of Turner's death. Specifically, he undertook to visit Crawford, who was then imprisoned in a Georgia correctional facility on another conviction, and to record his

conversation with Crawford. To this end, Capers requested an invitation to visit Crawford and Crawford put Capers on his visitor list.

Accompanied by Burke, Capers traveled to Georgia. He was wired by Burke with a recorder that Capers was unable to control once it was activated. Capers's visit with Crawford occurred in a separate room occupied by only the two of them, with a guard stationed outside a closed door containing a glass panel. During the recorded conversation, Crawford admitted to and described the murder of Turner in substantial detail corresponding to the manner of her death, and the place and circumstances in which her body had been discovered.

Before trial, Crawford's attorney sought to suppress the tape recording at a hearing conducted pursuant to *People v. Huntley*, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965). At the hearing, Crawford asserted that because Capers was acting as a law enforcement agent for the government, Capers should have administered *Miranda* warnings before conversing with him. State Supreme Court Justice Leslie Crocker Snyder (the "Trial Justice"), rejected Crawford's argument. The Trial Justice, finding that Burke was credible, made factual findings consistent with his testimony. Then, following *Illinois v.. Perkins*, 496 U.S. 292, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990), she found that the conversation between Capers and Crawford was not a "custodial interrogation" requiring *Miranda* warnings because Crawford was unaware of Capers's status as police agent and because Crawford "clearly relished 'boasting'" to Capers about the murder. *People v. Crawford*, 152 Misc.2d 763, 578 N.Y.S.2d 814, 820 (N.Y.Sup.Ct.1991). Subsequently, the tape recording was used at trial.

Crawford was convicted of second degree murder in New York County Su-

preme Court on January 14, 1992 after a jury trial. He was sentenced to a term of twenty five years to life that he is currently serving. Crawford appealed his conviction to the State Supreme Court, Appellate Division, First Department. That court affirmed the trial court's judgment on January 27, 1997 and the State Court of Appeals denied leave to appeal. *See People v. Crawford*, 231 A.D.2d 431, 647 N.Y.S.2d 729 (1st Dept.1997), *appeal denied*, 89 N.Y.2d 941, 655 N.Y.S.2d 892, 678 N.E.2d 505 (1997). Crawford did not petition the United States Supreme Court for a writ of certiorari.

Crawford apparently then made a collateral attack to his conviction, raising the same grounds for relief as are at issue here, in state court under N.Y.Crim.P.Law § 440.10. However, the documents comprising the petition were lost and, despite Crawford's diligent efforts to pursue it, the state courts never decided the petition. Crawford filed the instant petition with this Court in October 1998. Respondent (the "State") moved to dismiss the petition, claiming it was time-barred and precluded for failure to exhaust state remedies. Based on demonstrable evidence that the papers constituting Crawford's § 440.10 submission were duly filed with the state courts but lost, and that his petition would remain unresolved despite Crawford's efforts, this Court ruled that the instant petition was not time-barred and that the State may not rely on exhaustion of State remedies as its defense to the petition. *See Crawford v. Artuz*, 116 F.Supp.2d 442 (S.D.N.Y.2000).

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW*

1. *Degree of Deference Owed to State "Adjudication on the Merits"*

 ▆ A district court may grant an application for a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment if that state court adjudication either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 376, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Where federal claims were not "adjudicated on the merits" a district court may examine pure questions of law and mixed questions of law and fact *de novo*. *See Washington v. Schriver*, 255 F.3d 45, 54–55 (2d Cir.2001).

The choice of an appropriate standard of review is not automatic in this case. The habeas corpus statute, as amended, does not clearly identify a standard of review and the circuit courts disagree over the deference to be given to state court decisions. *Compare, e.g., Bell v. Jarvis*, 236 F.3d 149, 163 (4th Cir.2000) (en banc), *petition for cert. filed* (U.S. Mar. 29, 2001) (No. 00–9290); *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir.1999); *and Mercadel v. Cain*, 179 F.3d 271, 274 (5th Cir.1999), *with Hameen v. Delaware*, 212 F.3d 226, 248 (3d Cir.2000), *cert. denied*, — U.S. ——, 121 S.Ct. 1365, 149 L.Ed.2d 293 (2001); *see also Washington*, 255 F.3d at 53 (summarizing the split regarding when a state court decision constitutes an "adjudication").

The relevant analysis here is further complicated by the procedural posture of Crawford's state court filings. Prior to trial, the Trial Justice wrote a well-reasoned opinion denying Crawford's motion to suppress inculpatory statements Craw-

ford claimed violated his *Miranda* rights. *See Crawford,* 578 N.Y.S.2d at 820. Crawford did not directly appeal that decision, or any of the other issues raised in the immediate petition. Further, Crawford's state collateral attack petition, which purportedly raised the same issues raised here, was lost and never decided. Nevertheless, the outcome of this Court's review does not hinge on this threshold analysis because even if this Court were to review the State court decisions *de novo* the result here would remain the same.

### 2. Evidentiary Hearing

 In his reply brief, filed in connection with his instant petition, Crawford requested an evidentiary hearing on the grounds of "miscarriage of justice". Evidentiary hearings are necessary where the petitioner establishes cause for his failure to develop an adequate factual record below and prejudice resulting from that failure. *See Keeney v. Tamayo–Reyes,* 504 U.S. 1, 5, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992). A district court has discretion to order an evidentiary hearing where the material facts are in dispute. *See* 28 U.S.C. § 2254(d); *Townsend v. Sain,* 372 U.S. 293, 318, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Factors relevant to this decision include the existence of a factual dispute, the strength of proffered evidence, the thoroughness of the state proceedings, and the nature of the state court determination. *See Pagan v. Keane,* 984 F.2d 61, 64 (2d Cir.1993). In support of his conclusory assertion of the need for an evidentiary hearing, Crawford presented no specific facts to show how justice may have miscarried in his case. Without material facts in dispute, and on the basis of the trial transcript as well as the Trial Justice's written decision on Crawford's motion to suppress the tape recording, this Court finds that no evidentiary hearing is necessary to dispose of Crawford's petition.

### 3. Questions of Fact

Factual findings of the state court are presumed correct, and can be rebutted only by a showing of clear and convincing evidence. 28 U.S.C. § 2254(d) and (e)(1); *see Washington,* 255 F.3d at 54–55. The Trial Justice found that Crawford sought out the opportunity to speak with Capers; that Crawford did not suspect Capers to be a government agent; that Crawford was not physically restrained or separated from Capers; that Crawford was free to terminate the conversation or visit at any time; that Crawford initiated the conversation about the Turner murder; and that Crawford enjoyed "boasting" about the murder and its details to Capers. *See Crawford,* 578 N.Y.S.2d at 816–17, 820. The Trial Justice also found that Burke accompanied Capers on his visit to Crawford; that he placed the recording devices on Capers and activated them; and that after the visit concluded he deactivated the recorder and removed and "properly safeguarded" the tapes. *Id.*

 This Court presumes the Trial Justice's factual findings to be correct because Crawford did not rebut them with clear and convincing evidence. Crawford's conclusory assertions, set forth in his petition, that he (1) never trusted Capers because Capers was a known informant; (2) never invited Capers to visit him in jail; (3) was suspicious of Capers because Capers wore a suit jacket and no shirt; and that (4) at the outset of the conversation Crawford asked Capers if he was wired, do not present clear and convincing evidence sufficient to rebut the State court's factual finding that Crawford was unaware of Capers's informant status. Aside from his own assertion, Crawford presents no testimonial or documentary evidence and has not satisfied the clear and convincing stan-

dard necessary to support his claim that Capers was a known informant.

Second, Crawford's actions contradict his assertion that he never invited Capers to visit because Crawford had to take affirmative steps to obtain visiting rights for Capers. Finally, as to Crawford's remaining two assertions, considering the entire context of the recorded conversation, in particular the affability that prevailed between the two men and Crawford's uninhibited, incriminating bravado, this Court is not persuaded that there is any merit to Crawford's claim that he actually felt suspicious of Capers at that time.

## B. GROUNDS CLAIMED FOR HABEAS RELIEF

### 1. Absence of Miranda Warnings

As grounds for the attack on his conviction Crawford challenges the use at trial of the tape recording of his conversation with Capers. Crawford asserts that the admission of the tape at trial violated his constitutional rights because Capers, who was acting as an undercover agent, did not issue a Miranda warning before inducing Crawford to discuss the Turner murder.

■■■ Crawford's claim is contrary to law. Miranda rights are grounded on the Fifth, Sixth, and Fourteenth Amendments, and operate to limit the admissibility of involuntary statements made by an accused person during custodial interrogation. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The procedural process established by these rights is intended to prevent government coercion or intimidation of a suspect in custody. See id.; see also Alexander v. Connecticut, 917 F.2d 747, 750–51 (2d Cir. 1990), cert. denied, 501 U.S. 1219, 111 S.Ct. 2831, 115 L.Ed.2d 1000 (1991). Custodial interrogation consists of two elements: (1) the suspect must be held in police custody;

and (2) the suspect must be "aware that he is being interrogated by government authorities or their representatives." Alexander, 917 F.2d at 751.

■■■ Even assuming Capers was in fact a police agent, which may be inferred from the "extensive police initiation, support, and encouragement of the conversation", Alexander, 917 F.2d at 751, his conversations with Crawford, and Crawford's incriminating statements to him do not implicate Miranda rights. In fact, the situation here parallels the one in Alexander. In both cases, a friend was recruited by police to visit the defendant in prison and obtain incriminating statements from him. Each defendant made statements voluntarily and not while aware that he was being interrogated by government authorities or their agents. Instead, each believed he was speaking freely with a friendly visitor.

Thus, in the case at bar, as in Alexander, the type of intimidation on the part of the state envisaged in Miranda was not present, negating the need for Miranda warnings. See Perkins, 496 U.S. at 297–99, 110 S.Ct. 2394. In light of these circumstances, the Court concludes that Crawford's conversation with Capers was not a "custodial interrogation" within the meaning of Miranda and its progeny and that the state court thus properly admitted the confession. Briefly put, Miranda was not meant to protect defendants, like Crawford, from their own volunteered incriminating swagger and bluster.

### 2. Admission of Involuntary Confession

Crawford asserts that at the time of the conversation he knew Capers to be a police agent and such knowledge rendered his admission involuntary. Logically implicit in this challenge is an assertion that Mi-

*randa* protections should also, therefore, apply to bar introduction of the confession.

 A statement is involuntary if, in light of the totality of circumstances, the defendant's will to resist was overborne at the time of making the statement. *See Boulden v. Holman,* 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969); *Haynes v. Washington,* 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); *United States v. Henderson,* 520 F.2d 896 (2d Cir.1975). Under Fourteenth Amendment due process rights, self-incrimination based on fear, torture, and similar coercion is prohibited. *See Deshawn E. by Charlotte E. v. Safir,* 156 F.3d 340, 348 (2d Cir.1998) (*citing Brown v. Mississippi,* 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936)). In each particular case, the court must ask whether the conduct of law enforcement officials was the "kind of misbehavior that so shocks the sensibilities of civilized society as to warrant a federal intrusion into the criminal processes of the States." *Deshawn,* 156 F.3d at 348 (*citing Moran v. Burbine,* 475 U.S. 412, 433–34, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)).

 As previously discussed, based on the State *Huntley* suppression hearing, the Trial Justice issued a written decision finding that Crawford did not know Capers to be a police agent and that his statements to Capers were voluntary. *See Crawford,* 578 N.Y.S.2d at 820. For the reasons discussed above, although he contests these findings, Crawford failed to present clear and convincing evidence in his petition and reply to rebut the Trial Justice's finding of voluntariness.

This Court finds nothing on the record before it to suggest that Crawford's statements were made involuntarily even if he did suspect that Capers was an agent of the government. During the suppression hearing, the Trial Justice considered whether Crawford's confession was coerced and found that Crawford was free to terminate the conversation and to leave the room at any time by making a request to the prison guard who was stationed outside of the visiting room. *See Crawford,* 578 N.Y.S.2d at 820. Furthermore, Crawford had taken affirmative steps to obtain visiting rights for Capers. *See id.* On the basis of the evidence presented at the *Huntley* suppression hearing, the Trial Justice found Crawford's confession to be voluntary and boastful in nature. *Id.* In the absence of clear and convincing evidence demonstrating some form of coercion, this Court finds no basis here for disturbing the Trial Justice's finding of voluntariness.

### 3. *Presentation of Tampered Evidence*

Crawford presents several challenges to the validity of the tape recording of his conversation with Crawford. First, Crawford asserts that the police altered the tapes to exclude exculpatory language and portions of the conversation that show his confession was involuntary. Crawford also claims that the chain of custody and authenticity of the tapes was not sufficiently established at trial. The Court infers that Crawford contends that these evidentiary rulings denied him due process under the Fourteenth Amendment.

 A district court may review a habeas corpus petition only for constitutional violations. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire,* 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). A state court's erroneous ruling on an issue of state evidentiary law rises to a federal constitutional violation only if the error deprived the defendant of a *fundamentally fair* trial. *See Taylor v. Curry,* 708 F.2d 886, 891 (2d Cir.1983), *cert. denied,* 464 U.S. 1000, 104 S.Ct. 503, 78 L.Ed.2d 694 (1983).

■ Crawford has not sufficiently demonstrated that the Trial Justice's evidentiary rulings were clearly erroneous or denied him a fundamentally fair trial. First, nothing suggests that the Trial Justice's evidentiary rulings were incorrect. As discussed above, the Trial Justice's decision to permit introduction of the tape recordings following the *Huntley* hearing was proper. Once introduced, the State established the authenticity and chain of custody through the testimony of Burke. Burke testified that he was present when the recording devices were placed on Capers and activated; that Capers could not turn off the recorder without undressing; and that Burke took possession of the tapes from the recorder and initialed them immediately after Capers returned from the visiting room. Crawford Trial Transcript (hereinafter "Tr.") at 77–80, 83.

Burke also testified that he kept the tape recordings in his possession until placed in a safe in the New York District Attorney's Office. Tr. at 83–85. He identified the tapes at trial by reference to markings he had made on them. Tr. at 86. He identified Crawford's voice on the tape from the two previous occasions he had heard Crawford's voice, including the time he escorted Crawford from Georgia to New York for the trial. Tr. at 88–89. He identified Capers's voice from the numerous conversations he had with Capers. Tr. at 88. The Trial Justice accepted this evidence as establishing that the tapes were what the State purported them to be. Tr. at 109.

■ Secondly, Crawford's allegations of tampering go only to the weight of the evidence and not its admissibility. *See United States v. Sovie*, 122 F.3d 122, 127–28 (2d Cir.1997). Likewise, alleged weakness in the chain of custody and questions about the authenticity of evidence go only to the weight of evidence and not its ad-

missibility. *See Ramos v. Couqhlin*, No. 92 Civ. 5179, 1994 WL 228711, at *2 (S.D.N.Y. May 19, 1994).

Furthermore, Crawford's allegations are unsupported by fact. Crawford's claim that a detective maliciously altered the tapes appears particularly unfounded in light of the Trial Justice's statement that she ordered the tapes altered for "legal reasons". Tr. at 109. The State explains that the tapes were substantially redacted to protect Crawford by removing portions where he spoke of irrelevant matters and other crimes he committed. Resp't Answer at 25 n. 18.

Even granting Crawford the benefit of the doubt by drawing every reasonable inference in his favor, the Court is not persuaded that he has made his case by clear and convincing evidence. Crawford presents no evidence in support of his allegations that the prosecution did not establish the chain of custody of the tapes because the tapes: were not sealed at the prison where the conversation occurred; were not listened to until they had been transported from the prison; were altered maliciously; and were not identified properly at trial. Thus, standing alone, Crawford's bare assertions do not sustain a finding that his trial was fundamentally unfair.

Further, the Court is unaware of any evidentiary requirement that tape recordings be sealed or listened to before transportation. Finally, as already discussed, the Trial Justice ordered deletions in order to protect Crawford by excluding irrelevant and inflammatory material and Burke properly identified the tapes at trial after laying an adequate foundation based on his personal knowledge and direct involvement in the underlying events. As the record persuades this Court that the State trial provided Crawford with due process, the Court finds no reason to question further

the evidentiary decisions of the Trial Justice or the weight of the evidence at trial.

### 4. *Unconstitutional Search and Seizure*

Crawford claims that his Fourth Amendment right against unreasonable searches and seizures was violated because no warrant was issued before his conversation with Capers was recorded, and that this recording was an illegal form of eavesdropping.

A district court may not consider a Fourth Amendment claim in a petition for habeas corpus where the state has provided an opportunity fully and fairly to litigate it. *See Stone v. Powell,* 428 U.S. 465, 494–95, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).; *McPhail v. Warden,* 707 F.2d 67, 69 (1983). An "opportunity" means only that the state must make available a statutory mechanism for suppression of evidence that is tainted by an unlawful search or seizure, and that the state has not unconscionably prevented the petitioner from availing himself of that procedure. *See Gates v. Henderson,* 568 F.2d 830, 840 (2d Cir.1977) (en banc). New York has complied with this requirement. *See* N.Y.Crim.Proc.Law § 710; *see also McPhail,* 707 F.2d at 69 (New York's procedure for litigating a Fourth Amendment claim in a criminal trial complied with requirement that the State provide an opportunity to litigate such claims). Under Section 710, a defendant may seek before trial the suppression of allegedly tainted evidence. As discussed below, Crawford did not avail himself of the § 710 procedure. Accordingly, Crawford's failure to employ § 710 precludes this Court from considering his Fourth Amendment claim.

### 5. *Ineffective Assistance of Counsel*

Crawford claims that he was denied his right to effective assistance of counsel. A deprivation of the Sixth Amendment right to counsel undermines confidence in the fundamental fairness of a state adjudication and justifies the issuance of a writ of habeas corpus. *Williams v. Taylor,* 529 U.S. 362, 375, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). To establish a violation of this right, a defendant must first show that his counsel's performance was deficient, meaning that such representation fell below an objective standard of reasonableness. *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Second, a defendant must establish that his counsel's deficient performance prejudiced his defense. In this connection, prejudice is defined as a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052.

Crawford claims that his trial counsel severely erred by not addressing the voluntariness of his confession. This claim lacks merit. The record reflects that counsel sought a suppression hearing regarding Crawford's confession to determine whether it was made voluntarily. Indeed, the purpose of a suppression hearing is to determine the validity of a confession, including whether a confession was made voluntarily. *See* N.Y.Crim. Procedure L. § 710.10 *et seq; Huntley,* 255 N.Y.S.2d 838, 204 N.E.2d at 179. Additionally, Crawford's counsel preserved this issue for appeal.

Crawford claims that by not contesting the authenticity of the tapes at trial, his counsel committed severe error. It is true that Crawford's counsel did not raise the authenticity of the tapes at trial. However, under the circumstances, and in light of Burke's testimony, described above, it was not error for counsel strategically to focus his attention on issues with a higher probability of success. As such, Crawford's

claim that his counsel did not raise the issue deliberately in order that it not be preserved for appeal lacks merit.

Crawford also alleges that his counsel committed severe error by failing to raise unconstitutional search and seizure as an issue. Crawford is correct that his counsel did not utilize the pretrial § 710 procedure, discussed above, which would have permitted raising any lack of search warrant issue in a later challenge to the conviction. However, counsel did not err because there is no cognizable search and seizure issue here. Warrants are not required for recordings of conversations between an informer and suspect because the Fourth Amendment does not protect "'a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it.'" *United States v. White*, 401 U.S. 745, 749, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971) (quoting *Hoffa v. United States*, 385 U.S. 293, 302, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966)); *see also People v. Teicher*, 52 N.Y.2d 638, 439 N.Y.S.2d 846, 422 N.E.2d 506 (1981). It would be anomalous to deem counsel's representation of an accused ineffective because he failed to assert or advocate a meritless claim. *See Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).

In fact, the record contradicts Crawford's claim of ineffective assistance of counsel. Before trial, counsel made a skilled attempt to suppress the recording of Crawford's incriminating conversation with Capers. At trial, faced with the admission into evidence of the highly inculpatory tape, counsel attempted to diminish the recording's impact by cross-examining prosecution witnesses to emphasize inconsistencies between the crime scene and Crawford's recorded statements, and by presenting a theory that Crawford was merely bragging and taking credit for a murder he did not commit in order to anger the victim's boyfriend. Tr. at 275–88. During trial he objected to the prosecution's questions, Tr. at 134, 140, 266–68, and sought to keep inflammatory photographs away from the jury's sight. Tr. at 93–107, 244–46. Additionally, counsel sought jury instructions on a lesser included offense based on Crawford's intoxication through crack cocaine use. Tr. at 216–228. In this Court's review of the record, counsel's overall performance appears attentive, skilled and zealous. Accordingly, the Court denies Crawford's petition for a writ of habeas corpus on the grounds of ineffective assistance of counsel.

## III. CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

**ORDERED** that Petitioner Thomas L. Crawford's petition for a writ of habeas corpus is DENIED; and it is further

**ORDERED** that the Clerk of Court is directed to close this case.

As Crawford has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). *See also United States v. Perez*, 129 F.3d 255, 259–60 (2d Cir.1997); *Lozada v. United States*, 107 F.3d 1011, 1014–16 (2d Cir.1997). The Court certifies that, pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**SO ORDERED:**